| ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joel G. Porter, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Count I — The Winnfield Cemetery Matter
In February 1994, Mamie Burden Williams and five others retained respondent to represent them in a suit against the Winnfield Funeral Home Cemetery (“Winnfield”).[1] Respondent agreed to pursue the matter on a contingent fee basis plus an additional charge of $250 per person for costs, which the parties paid.
In April 1994, respondent filed a lawsuit against Winnfield and its insurer on behalf of his six clients. In June 1995, respondent amended the petition to add twenty additional plaintiffs. Thereafter, respondent had no further contact with his clients.
In March 1996, Christopher Whitting-ton, an attorney with whom respondent shared an office in Baton Rouge, enrolled as co-counsel in the Winnfield case. At the same time, Mr. Whittington filed a motion for preliminary default, which was granted on March 20, 1996. Sometime thereafter, respondent and Mr. Whitting-ton severed |atheir professional relationship and respondent opened a law office at the Weller Avenue Baptist Church in Baton Rouge, where he was a minister. In June 1998, Mr. Whittington filed a motion to withdraw as co-counsel, which was granted.
In October 1998, attorney David Lefeve filed an answer to the plaintiffs’ petition on behalf of the defendants. In February 1999, Mr. Lefeve sent a discovery request to the plaintiffs via certified mail addressed to respondent’s post office box, which was properly delivered. Respondent did not produce the requested information. Mr. Lefeve then filed a motion to compel, but respondent did not appear at the hearing on the motion in October 1999. In November 1999, the trial court ordered respondent to respond to the discovery request. Respondent did not comply with the order. As such, in February 2000, Mr. Lefeve filed a motion to dismiss. Respondent did not appear at the hearing on the motion to dismiss, and a judgment dismissing the plaintiffs’ ease without prejudice was rendered in March 2000.
In October 2000, Ms. Williams learned of the dismissal of the suit and filed a complaint against respondent with the ODC.
Count II — The West Matter
In February 1997, respondent filed a defamation suit against Yolanda Hill on *877 behalf of his clients, Charles and Patricia West. An affidavit was attached to the petition, purportedly signed in respondent’s presence by Mr. and Mrs. West, attesting that the factual allegations contained in the petition were true. The affidavit was notarized by respondent. However, Mrs. West did not sign the verification in respondent’s presence. Instead, respondent witnessed Mr. West sign the verification with his wife’s signature. The improperly notarized verification was filed into the court record and served upon the defendant, Ms. Hill, who subsequently filed a complaint against respondent with the ODC.
| ¡.DISCIPLINARY PROCEEDINGS
The ODC filed two counts of formal charges alleging that respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 3.3(a) (candor toward the tribunal), 4.1(a) (knowingly making a false statement of material fact or law to a third person), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondent answered the formal charges, denying any misconduct on his part. In Count I, respondent contended that the motion to compel was improperly served because the service address was that of the church where he was a minister. He denied ever receiving this service. Respondent also asserted that he had no notice of Mr. Whittington’s motion to withdraw, which did not include a certificate of service. Furthermore, Mr. Whittington had possession of the file because he would not allow respondent to take the file when respondent vacated Mr. Whittington’s office in 1996. Respondent asserted that he attempted to contact Mr. Whittington regarding the case but was unsuccessful. As an affirmative defense, respondent claimed he reasonably relied upon Mr. Whittington to handle the case.
As to Count II, respondent admitted the notarial act was improper; however, he claimed the verification was not “legally material” to the suit and contained no material facts. Respondent also pointed out that Mr. West signed his wife’s signature with her permission. Respondent nevertheless acknowledged the profession could be harmed by such a practice and asserted that same would not occur in the future.

14Hearing Committee Recommendation

This matter proceeded to a formal hearing on the merits, at which respondent and others testified. Following the hearing, the hearing committee determined that respondent’s testimony in regard to Count I was not credible. Specifically, the committee stated, “[respondent’s testimony that he left everything in the hands of Mr. Whittington even after he removed himself from Mr. Whittington’s office building does not ring true.” Based on its evaluation of the testimony and documentary evidence, the committee made the following findings of fact regarding Count I:
1. In February 1994, Ms. Williams, Lionel Courtney, and others retained respondent to represent them in a civil suit for damages against Winnfield Funeral Home regarding the displacement of headstones on family burial sites.
2. Respondent agreed to represent them, and each person was instructed to bring a retainer of $250 to cover the costs, for a total of $1,350. Mr. Courtney paid $1,000 of this amount for himself and for others.
3. On April 23, 1994, respondent filed a petition for damages on behalf of the plaintiffs, and on June 5, 1995, he filed an *878 amending petition adding an additional twenty plaintiffs to the suit.
4. On March 15, 1996, attorney Christopher Whittington filed a motion to enroll as co-counsel.
5. On June 8, 1998, Christopher Whit-tington filed a motion to withdraw and did, in fact, withdraw from the case.
6. During this time, respondent did not communicate with the plaintiffs, did not provide them with a copy of their legal pleadings, and did not actively pursue their case in any way.
7. On October 29, 1998, David Lefeve answered on behalf of the defendant.
|58. On January 15, 1999, Mr. Lefeve attempted to correspond with respondent at Mr. Whittington’s law office in Baton Rouge, which letter was returned.
9. On February 17, 1999, interrogatories were forwarded to respondent by certified mail at his new law office at the Weller Avenue Baptist Church, which was received by respondent on February 26, 1999. Respondent failed to respond to the requests for information.
10. On March 25, 1999 and April 20, 1999, Mr. Lefeve wrote to respondent at the Weller Avenue Baptist Church address (both the post office box and the street address). Respondent still refused to respond to any inquiries from the defendant’s attorney.
11. On June 14, 1999, a motion to, compel was filed and mailed to respondent at the street address of the Weller Avenue Baptist Church.
12. Respondent failed to attend the hearing scheduled for October 25, 1999.
13. On November 4, 1999, the court ordered respondent to respond to the discovery requests, but respondent refused.
14.The plaintiffs’ suit was eventually dismissed on March 20, 2000.
Based on these factual findings, the committee determined that respondent failed to keep his clients advised of the status of their case and completely neglected their case, resulting in the loss of the retainer as well as the dismissal of the case. After respondent left Mr. Whitting-ton’s office, he received several legal documents, letters, and phone calls at his new law office, which he basically ignored. He failed to notify his clients of his new address or that he was no longer in association with Mr. Whittington. Respondent completely abandoned his clients, which ultimately led to the dismissal of their case.
Relying on this court’s prior jurisprudence and the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction for |fithe misconduct in Count I is suspension. The committee found the following aggravating factors: a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1992), and indifference to making restitution. In mitigation, the committee found the absence of a prior disciplinary record and remorse.
For his misconduct in Count I, the committee recommended that respondent be suspended from the practice of law for one year and one day. The committee also recommended that respondent be required to make restitution to his clients.[2]
The committee made the following findings of fact as to Count II:
1. On February 28, 1997, respondent filed a defamation suit on behalf of Charles *879 and Patricia West in Baton Rouge City Court.
2. Attached to the petition was a verification of petition purported to have been signed by Patricia West in respondent’s presence and notarized by him.
3. Patricia West did not appear before respondent on the date the verification was signed. Instead, respondent allowed Mrs. West’s husband, Charles West, to sign the verification.
4. Respondent knew the verification was improper at the time it was signed.
5. Mr. West had Mrs. West’s permission to sign the verification on her behalf.
The committee determined the baseline sanction for the misconduct in Count II is a reprimand. Accordingly, the committee recommended that respondent be publicly reprimanded for his misconduct in Count II.
Both respondent and the ODC filed objections to the hearing committee’s recommendation.
1 tDisciplinary Board Recommendation
After review, the disciplinary board found that the hearing committee’s findings of fact are generally supported by the record and are not manifestly erroneous. In particular, the board determined there is ample evidence in the record to show that respondent received several letters and motions at the Weller Avenue Baptist Church address, though some of the correspondence is not in the record. The board was uncertain how the committee calculated the total retainer amount of $1,350, although the committee correctly found that each of the six original clients in Count I were instructed to pay a retainer of $250 and that Mr. Courtney paid $1,000 for himself and others. In all other respects, the board found support in the record for the committee’s factual findings and adopted same.
The board found that respondent violated Rules 1.3 and 1.4 of the Rules of Professional Conduct in regard to Count I. As to Count II, the board found that respondent violated Rules 3.3(a), 4.1(a), 8.4(a), 8.4(c), and 8.4(d).
In violating the above Rules of Professional Conduct, the board determined that respondent violated duties owed to his clients, the public, and the legal system. He acted knowingly, causing harm to his clients in Count I and to the “public record” and the profession in Count II.
In Count I, the board found that respondent did nothing after filing the petition and amended petition. He did not provide his clients with information or copies of any pleadings. He did not take action even after receiving pleadings and letters from defense counsel. Furthermore, although he claimed Mr. Whittington was handling the matter, respondent failed to file a motion to withdraw and did not notify his clients that he would no longer be representing them. He tried to blame Mr. Whittington by suggesting he did not receive notice of Mr. Whittington’s withdrawal; however, respondent “seems oblivious to the fact that he abandoned his clients |swithout any notice to them whatsoever.” He failed to follow the rules regarding notification designed to protect his clients and upon which they were entitled to rely. Finally, respondent argued that his clients were not harmed because their suit was dismissed without prejudice. However, respondent was first retained in 1994. To date, his clients have no information regarding the status of their case, and it remains unresolved.
In Count II, the board found that respondent admitted he notarized the verification. However, he argued that the verification was immaterial. Nonetheless, the lack of candor in his actions caused harm.
*880 The board determined the baseline sanction for respondent’s misconduct is suspension under the ABA’s Standards for Imposing Lawyer Sanctions. The board adopted the aggravating and mitigating factors found by the committee and added the aggravating factor of multiple offenses.
Considering these findings and this court’s prior jurisprudence, the board recommended that respondent be suspended from the practice of law for eighteen months. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record reveals that in Count I, respondent neglected his clients’ legal matter and failed to communicate with them. He moved out of Mr. Whittington’s office and relocated to a church, where he maintained a small law practice but primarily considered himself a minister. Nevertheless, respondent did not properly withdraw from the Winnfield cemetery case or take steps to notify his clients that he would no longer be handling their legal matter. In Count II, respondent admitted that he improperly notarized a pleading that he later filed into the court record.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges. He violated duties owed to his clients, the legal system, and the profession. He acted knowingly, causing actual harm to his clients and potential harm to the legal system. The baseline sanction is a period of suspension.
I mThe aggravating factors present are multiple offenses and vulnerability of the victims. In mitigation, we recognize that respondent has no prior disciplinary record and was relatively inexperienced in the practice of law at the time of the misconduct at issue here. He has also expressed remorse for his conduct and has pledged to avoid similar problems in the future.
Under these circumstances, we conclude the appropriate sanction for respondent’s misconduct is a one-year suspension from the practice of law.
*881 DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Joel Gerard Porter, Louisiana Bar Roll number 21825, be suspended from the practice of law for one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Ms. Williams and the other plaintiffs claimed that Winnfield removed all the headstones in the cemetery to perform work on the land to correct drainage problems. When the cemetery replaced the headstones following the work, it put them back on the wrong graves.

. Following the issuance of the hearing committee’s report, respondent paid $1,350 in restitution to the plaintiffs in the Winnfield cemetery matter.